1
2
3
4
5
6
7
8             **UNITED STATES DISTRICT COURT**
9             **EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11 RUFINA HILARIO GARCIA, individually and ) | Case No.: 1:20-cv-0093 NONE JLT |
| 12 on behalf of Ce.H.G., M.H.G., P.H.G., Ca.H.G., ) and O.H.G., minors, being the heirs of and ) | **FINDINGS AND RECOMMENDATIONS** |
| 13 successors-in-interest to SANTO HILARIO ) GARCIA and MARCELINA GARCIA ) | **GRANTING IN PART PLAINTIFFS' MOTION FOR APPROVAL OF THE MINORS'** |
| 14 PROFECTO, ) | **COMPROMISE** |
| 15         Plaintiffs, ) | (Doc. 37) |
| 16     v. ) | |
| 17 COUNTY OF KERN, et al., ) | |
| 18         Defendant. ) | |

19

20        Plaintiffs are the children of Santo Hilario Garcia and Marcelina Garcia Profecto, and assert

21 the Government is liable for the wrongful deaths of their parents following a high-speed vehicle chase

22 by the United States Department of Homeland Security and its Immigration and Customs Enforcement

23 Agency.  (*See generally* Doc. 1.)  Plaintiffs now seek approval of the settlement reached with the

24 Government, which indicated it supports the petition for approval.  (Docs. 37, 38.)

25        The Court finds the matter suitable for decision without oral argument, and the motion is taken

26 under submission pursuant to Local Rule 230(g).  For the reasons set forth below, the Court finds the

27 proposed settlement of the claims to be fair and reasonable, and the Court recommends the motion for

28 approval of the minors' compromise be **GRANTED IN PART**.

## I.        Background and Procedural History

Plaintiffs allege that on March 13, 2018, Enforcement and Removal Operations Deportation Officers Ramiro Sanchez and Dimas Benitez conducted "surveillance at a residence located at 1313 Albany Street in Delano, California, for the purpose of detaining Celestino Hilario Garcia for deportation." (Doc. 1 at 5, ¶ 12.) Santo Hilario Garcia, Marcelina Garcia Profecto, and one of their daughters exited the residence at approximately 6:40 a.m. (*Id.*, ¶ 13.) The three entered a "2001 Ford Explorer Sport Trac vehicle, which had been parked at the surveillance location the entire time that Sanchez and Benitez were present." (*Id.*, ¶ 14.) According to Plaintiffs, the "vehicle was registered to Santo Hilario Garcia, not the target of the instant deportation efforts, and the California license plate thereon was issued to Santo Hilario Garcia." (*Id.*)

Mr. Garcia "drove his vehicle to his daughter's school," at which time she exited the vehicle. (Doc. 1 at 6, ¶ 15.) Plaintiffs assert Officers Sanchez and Benitez "were directly behind Mr. Garcia's vehicle." (*Id.*) Plaintiffs allege that when "Mr. Garcia began driving his vehicle away from the school…, Sanchez turned on "the emergency police lights on his unmarked ICE vehicle" to conduct a "traffic enforcement stop." (*Id.* at 6, ¶ 16.) Plaintiffs assert Sanchez "participated in the traffic stop" from a separate unmarked ICE vehicle. (*Id.*) Plaintiffs report that "Mr. Garcia stopped his vehicle," but "[a]s Benitez and Sanchez began to exit their respective unmarked ICE vehicle[s], Mr. Garcia left the scene driving his vehicle on West Cecil Avenue in Delano." (*Id.*)

"[A]t approximately 6:53 A.M., Mr. Garcia lost control of his vehicle, ran off the road, and struck a utility pole, killing him and his wife, Marcelina Garcia Profecto." (Doc. 1 at 7, ¶ 19.) According to Plaintiffs, "In a subsequent investigation by the Delano Police Department, Sanchez and Benitez told the investigators that they then 'followed' Mr. Garcia's vehicle for approximately 15 seconds, but they were not chasing or 'in pursuit' of Mr. Garcia's vehicle." (Doc. 1 at 6, ¶ 18.) Plaintiffs contend this statement is "false" and contend it is clear from "video evidence that both Benitez and Sanchez were in pursuit of Mr. Garcia's vehicle, at a high rate of speed and with emergency police lights on and working." (*Id.* at 7.) Plaintiffs believe "Benitez and Sanchez were engaged in a high-speed vehicular chase and pursuit at the time of or immediately prior to the crash that killed Plaintiff's Decedents, that the initiation and continuation of that chase was negligent, grossly

2

1  negligent, or reckless, willfully wrongful, unreasonably dangerous, unlawful, and unjustified." (*Id.* at

2  7.)  Plaintiffs, the children of Santo Hilario Garcia and Marcelina Garcia Profecto, seek to hold the

3  Government liable for the deaths of their parents. (*Id.* at 9-12.).

4      The Government maintains that "surveillance video, which shows all of the vehicles

5  approximately one mile before the accident occurred, demonstrates that Decedents were driving in

6  excess of 90 mph whereas the ICE Officers were traveling within the designated speed limit." (Doc.

7  38 at 2.)  In addition, the Government asserts "three eye witnesses told the Delano police that

8  Decedents' truck was driving recklessly, passing cars at a high rate of speed, passing into oncoming

9  traffic, and driving on the dirt shoulder." (*Id.*)  According to the Government, eye-witnesses reported

10  they "looked around to see whether anyone was pursuing the vehicle and did not see anyone," and

11  each witness stated "there were no cars with lights or sirens in view." (*Id.*) Therefore, the Government

12  asserts that Plaintiffs could not establish liability for wrongful death. (*Id.*)  Further, the Government

13  contends Plaintiffs face "legal hurdles" because the Court lacks subject matter jurisdiction over a

14  claim for false statements to the police, and "[t]he FTCA does not waive sovereign immunity for

15  alleged violations of federal law or policy or where there is no private tort cause of action under

16  California law." (*Id.* at 2-3.)

17      On March 18, 2021, the Government informed the Court that it "reached a conditional

18  settlement with Plaintiffs" on March 18, 2021. (Doc. 35 at 1.)  Plaintiffs filed the motion for approval

19  of a settlement in the total amount of $600,000.00 to resolve the claims presented in this case. (Doc.

20  37.)  The Government filed a statement in support of the motion, asserting the "settlement was

21  negotiated over many months, after some discovery, and was reached in good faith." (Doc. 38 at 3.)

22      The Court found the motion lacked significant information to determine whether the settlement

23  terms were "in the best interests of the minor children." (Doc. 39 at 2.)  For example, the Court

24  observed the settlement contemplates an "initial lump sum payment of $250,000 for payment of

25  attorney's fees and costs and cash to Rufina Garcia," and the expected initial sum for Ms. Garcia was

26  approximately $80,000. (*Id.*, quotation marks and citation omitted.)  However, Plaintiffs failed to

27  explain why such payment was appropriate. (*Id.*)  In addition, Plaintiffs failed to provide information

28  regarding the proposed annuity payments, such as whether a single annuity would be purchased or

separate ones for each minor.  (*Id.*)  Finally, the Court noted Plaintiffs had "not provided any evidence that Ms. Garcia gave written consent to the settlement terms or that she understands that the payments from the annuity are for the benefit of the minor plaintiffs only and cannot be used for any other purpose."  (*Id.*)  Therefore, the Court ordered Plaintiffs to provide supplemental briefing and evidence regarding the expected payments from the settlement fund and the anticipated annuity payments no later than May 28, 2021.  (*Id.* at 3.)

Plaintiffs filed a response to the Court's order on May 19, 2021.  (Doc. 40.)  Plaintiffs reported that funds from the initial lump sum to Ms. Garcia was to be used for: (1) "[r]epayment of past expenses as she deems fit" and (2) "[c]osts of repairs to the house that Plaintiffs' decedent parents owned and in which Plaintiff Rufina Hilario Garcia and the minors will reside when the repairs are completed, and to provide temporary housing for the Plaintiffs until such time as the repairs to their house are completed."  (*Id.* at 2.)  Plaintiffs also explained the anticipated annuity purchases on behalf of each minor, and the anticipated payments for each minor.  (*Id.* at 2-4.)

On June 6, 2021, the Court issued a second order requiring supplemental briefing, noting Plaintiffs "failed to address all of the issues raised by the Court," including whether any of the "initial lump sum" would be spent on the minors or their care.  (Doc. 41 at 1.)  For example, the Court noted there was no information regarding the expenses incurred, whether the funds would be used for the minors, or whether the children had any ownership stake in the home in which they would live.  (*Id.* at 2.)  Therefore, the Court ordered Plaintiffs to file further supplemental briefing addressing the lump sum to be received by Ms. Garcia and the payments to be received by the minors.  (*Id.*)

On June 18, 2021, Plaintiffs filed additional briefing, and Ms. Garcia reported she has been responsible for her minor siblings' housing, food, transportation, healthcare, clothing, education, and miscellaneous expenses.  (Doc. 42-1 at 2, Garcia Decl. ¶ 5.)  According to Ms. Garcia, the home in which they were living needs "repairs and renovations," and until these are completed, she needs to find housing large enough for Ms. Garcia, her five siblings, and her own three children.  (*Id.* at 2-3, ¶ 6.)  Ms. Garcia reports that "[w]ith the upfront portion of the settlement, it is [her] responsibility and intent to purchase a reliable vehicle large enough to transport [her] family, rent a three- or four-bedroom apartment or house to provide housing large enough for [her] family, provide food, clothing,

healthcare (including dental/orthodontic care), and any other necessary miscellaneous expenses [they] may incur." (*Id.* at 3, ¶ 10.)

## II.     Settlement Approval Standards

No settlement or compromise of "a claim by or against a minor or incompetent person" is effective unless it is approved by the Court.  Local Rule 202(b).  The purpose of requiring the Court's approval is to provide an additional level of oversight to ensure that the child's interests are protected.  Toward this end, a party seeking approval of the settlement must disclose:

> the age and sex of the minor, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount . . . was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent.

Local Rule 202(b)(2).

The Ninth Circuit determined that Federal Rule of Civil Procedure 17(c) imposes on the Court the responsibility to safeguard the interests of child-litigants. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011).  Thus, the Court is obligated to independently investigate the fairness of the settlement even where the parent has recommended it.  *Id.*, at 1181; *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's … guardian ad litem").  Rather than focusing on the amount of fees to be awarded, the Court must evaluate whether the net amount to a child is fair and reasonable "without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel" and "in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181-1182.

## III.     Discussion and Analysis

The petition for approval of the settlement reached on behalf of the minor Plaintiffs— Ce.H.G., M.H.G., P.H.G., Ca.H.G., and O.H.G.— sets forth the information sufficient to satisfy Local Rule 202(b)(2).  The minor plaintiffs "currently range in age from 11 to 17 years old."  (Doc. 37 at 4.)  Although Plaintiffs have not identified the specific ages or the sexes of the minors in the motion as

5

required by the Local Rules, they previously reported Ce.H.G. was born on July 20, 2003; M.H.G. was born on June 25, 2004; P.H.G. was born on January 15, 2006; Ca.H.G. was born on September 9, 2007; and O.H.G. was born on June 23, 2008.  (Doc. 18-1 at 1, ¶ 2.)  Thus, the Court finds the information in this regard, which is found in the record is sufficient.

The minor plaintiffs and their older sibling, Rufina Hilario Garcia, are all the natural children of Santo Hilario Garcia and Marcelina Garcia Profecto.  (Doc. 18-1 at 1, ¶ 3.)  Plaintiffs contend the Government is liable for the wrongful death of their parents and sought "damages for the loss of the love and affection, financial, moral and parental support, encouragement, and parental guidance of their parents, of which they have now been permanently deprived."  (Doc. 1 at 13.)

## A.    Award to Plaintiffs

Plaintiffs, including Rufina Hilario Garcia, individually and on behalf of her minor siblings, have agreed to accept $600,000.00 to resolve the claims presented in this case.  (Doc. 37 at 4; *Id.* at 6, Swanner Decl. ¶ 4.)  Plaintiffs report there will be an "initial lump sum payment" of $250,000.  (*Id.* at 4.)  After payment of the proposed attorneys' fees and costs, Plaintiffs report the remaining $89,994.54 will be paid to Rufina Hilario Garcia.  (Doc. 40 at 2.)

Plaintiffs indicate $350,000 from the settlement to "be divided into six equal shares," and will be paid with structured annuities.  (Doc. 37 at 4.)  Plaintiffs report "[t]he annuity for the minors will make one specified annual payment for 11 years and then a lump sum payment when each minor is older."  (*Id.*)  Specifically, Plaintiffs report:

The aggregate sum of Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00), the "Annuity Premium Amount," is to be paid to an annuity company or companies to purchase annuity contracts as follows:

A.  At an annuity purchase cost of Fifty-eight Thousand Three Hundred Thirty-three and 33/100 Dollars ($58,333.33) payable to **O.H.G.,** the sum of One Thousand Seven Hundred and 00/100 Dollars ($1,700.00) per year for eleven (11) years (eleven (11) annual payments) certain, commencing June 23, 2026, with the last certain payment on June 23, 2036, and Sixty-five Thousand Two Hundred Eighty-five and 00/100 Dollars ($65,285.00) payable on June 23, 2039.

B.  At an annuity purchase cost of Fifty-eight Thousand Three Hundred Thirty-three and 33/100 Dollars ($58,333.33), payable to **Ca.H.G.,** the sum of One Thousand Five Hundred Sixty and 00/100 Dollars ($1,560.00) per year for eleven (11) years (eleven (11) annual payments) certain, commencing September 9, []2025, with the last certain payment on September 9,2035; and Sixty-three Thousand Five Hundred Sixty and 00/100 Dollars ($63,560.00) payable on September 9, 2037.

6

C. At an annuity purchase cost of Fifty-eight Thousand Three Hundred Thirty three and 33/100 Dollars ($58,333.33), payable to **P.H.G.**, the sum of One Thousand Three Hundred Forty and 00/100 Dollars ($1,340.00) per year for eleven (11) years (eleven (11) annual payments) certain, commencing January 15, 2024, with the last certain payment on January 15, 2034; and Sixty-two Thousand Seven Hundred and 00/100 Dollars ($62,700.00) payable on January 15, 2036.

D. At an annuity purchase cost of Fifty-eight Thousand Three Hundred Thirty-three and 33/100 Dollars ($58,333.33), payable to **M.H.G.**, the sum of One Thousand One Hundred Twenty-five Dollars ($1,125.00) per year for eleven (11) years (eleven (11) annual payments) certain, commencing June 25, 2022, with the last certain payment on June 25, 2032; and Sixty-one Thousand Eight Hundred Sixty and 00/100 Dollars ($61,860.00) payable on June 25, 2034.

E. At an annuity purchase cost of Fifty-eight Thousand Three Hundred Thirty-three and 34/100 Dollars ($58,333.34), payable to **Ce.H.G.**, the sum of One Thousand and 00/100 Dollars ($1,000.00) per year for eleven (11) years (eleven (11) annual payments) certain, commencing June 20, 2021, with the last certain payment on July 20, 2031; and Sixty-one Thousand Four Hundred Seventy and 00/100 Dollars ($61,470.00) payable on July 20, 2033.

F. At an annuity purchase cost of Fifty-eight Thousand Three Hundred Thirty-three and 33/100 Dollars ($58,333.33), payable to **Rufina Hilario Garcia**, the sum of Four Hundred and 00/100 Dollars ($400.00) per month for ten (10) years (one hundred twenty (120) monthly payments) certain, commencing one month from the date of the annuity funding; and Fifteen Thousand One Hundred Thirty and 00/100 Dollars ($15,130.00) payable ten (10) years from the date of the annuity funding.

(Doc. 40 at 2-3, emphasis added.)  Plaintiffs assert that "[t]he purpose of structuring the funds in this manner is to protect the funds for each minor and extend their availability." (Doc. 37 at 4.)  Further, this provides a total guaranteed payout of $451,980.00 to Plaintiffs from the annuities. (Doc. 40 at 9.)

### B. Proposed Attorney Fees and Costs

In addition to the approval of the settlement itself, any attorney's fees and costs to be paid for representation of minors must be approved by the court. *See* Cal. Prob. Code § 3601.  To determine whether a request for fees is reasonable for representation of a minor, the Court may consider the time and labor required, whether the minors' representative consented to the fee, the amount of money involved and the results obtained, and whether the fee is fixed, hourly, or contingent. *See* California Rule of Court 7.955(b).  When a fee is contingent, the Court should also consider the risk of loss, the amount of costs advanced by the attorney, and the delay in reimbursement of costs and payment of fees to determine if the amount is reasonable. *See* California Rule of Court 7.955(b)(13).

Out of the settlement proceeds, Plaintiffs' counsel will be awarded fees in the amount of 25%

7

of the settlement fund, a total of $150,000.00, pursuant to the retainer agreement.  (Doc. 37 at 7, Swanner Decl. ¶¶ 6, 15.)  In addition, counsel seek $10,005.46 in costs and expenses incurred.  (*Id.* at 9, 11.)  Counsel have not provided any information regarding the time expended on this action or the specific tasks undertaken.  (*See generally* Doc. 37.)  However, Mr. Swanner reports the settlement "was reached after the exchange of extensive discovery and months of settlement discussions."  (*Id.* at 6, Swanner Decl. ¶ 4.)  Previously, the parties reported that Plaintiffs served the Government with requests production and Plaintiffs responded to the Government's interrogatories, requests for admissions, and requests for production of documents.  (Doc. 31 at 1-2.)  In addition, they informed the Court in September 2020 that settlement discussions had begun, though the parties did not believe it likely at the time that an agreement would be reached.  (*Id.* at 3.)  Although the Government denies liability, it indicates it belief that the settlement was reached "to avoid the time, expense, and risk associated with this litigation."  (Doc. 38 at 3.)

Previously, this Court observed: "It has been the practice in the Eastern District of California to consider 25% of the recovery as the benchmark for attorney fees in contingency cases for minors." *Mitchell v. Riverstone Residential Group*, 2013 WL 1680641 at *2 (E.D. Cal. Apr. 17, 2013); *McCue v. S. Fork Union Sch. Dist.*, 2012 WL 2995666, at *2 (E.D. Cal. July 23, 2012) (same). Thus, the amount requested by counsel is equal to the benchmark.  Based upon the informed decisions of the parties after the lengthy settlement negotiations—and particularly the fact that the fees requested are based upon a retainer agreement—the Court finds the requested fees and expenses are reasonable.

### C.    Separate additional lump payment to Ms. Garcia

As noted above, Plaintiffs report there will be an "initial lump sum payment" of $250,000, from which an expected $89,994.54 would be paid to Rufina Hilario Garcia.  (Doc. 40 at 2.) The Court twice expressed concern regarding the propriety of such a payment from the settlement fund, from which Ms. Garcia will also receive annuity payments.  (*See* Docs. 39, 41.)  The Court ordered Plaintiffs to provide information regarding this initial lump sum, to which she responded Plaintiffs responded that the payment was for (1) "[r]epayment of past expenses as she deems fit" and (2) "[c]osts of repairs to the house that Plaintiffs' decedent parents owned and in which Plaintiff Rufina Hilario Garcia and the minors will reside when the repairs are completed, and to provide temporary

housing for the Plaintiffs until such time as the repairs to their house are completed." (Doc. 40 at 2.)
The Court directed Plaintiffs to file further briefing due to the vagueness of this response, observing:

> There is no description of the "expenses" at issue or whether these were incurred on behalf the children or due to the care Ms. Garcia has provided and will provide to them. If she intends to use these funds to pay for necessities as the children age, there is no showing how the funds will be divided among the children or the fairness to them, if they are not divided. Likewise, she fails to explain why the funds should not be placed in a blocked account for the minors benefit with withdrawals made only upon approval of the Court.
> Finally, there is no indication whether the children have any ownership stake in home where they live with Ms. Garcia, such that they should be obligated to pay for its repair. On the other hand, if the "initial lump sum" is purely for Ms. Garcia's use, she has continued to fail to explain why such a payment is appropriate.

(Doc. 41 at 2.) Although Plaintiffs complied with the order to file additional briefing, Plaintiffs failed to address the concerns identified by the Court.

Ms. Garcia reported that she has been responsible for her minor siblings' housing, food, transportation, healthcare, clothing, education, and miscellaneous expenses. (Doc. 42-1 at 2, Garcia Decl. ¶ 5.) However, the status as a guardian alone is not a reason for money to be taken from the settlement fund. Indeed, any guardian a minor who happens to be a plaintiff in an action is likewise responsible for the minors' welfare, and may be required to petition the Court to access funds. *See, e.g.*, *Guerra v. Madera Mgmt. Co*. 2012 WL 4091994 at *5 (E.D. Cal. Sept. 17, 2012) (indicating the settlement funds would be placed in a blocked account, and the guardian ad litem would not be able to make any withdrawals "without a written order"); *see also Williams v. Cty of Monterey*, 2020 WL 7342737 at *1 (N.D. Cal. Dec. 14, 2020) ("district courts within the Ninth Circuit commonly order that such funds be deposited into a blocked account for the minor's benefit").

Plaintiffs have refused to adequately address the Court's concerns regarding the separate payment to Ms. Garcia, or whether the minor plaintiffs would benefit from the separate payment. For example, while maintaining the home needs "repairs and renovations," Plaintiffs have not identified the repairs that are necessary for them to reside in the home, nor provided any estimate of the costs anticipated. In addition, Plaintiffs failed to address whether the minor plaintiffs have an ownership share of the home in which they will reside, such that they should bear part of the burden of the repair that will also benefit the biological children of Ms. Garcia. Similarly, it is unclear why the entirety of the funds for a vehicle that will benefit Ms. Garcia and her children should be taken from the

settlement fund.  There is no showing that the payment, as a whole, would be used for the benefit of *all* the plaintiffs, or the fairness to them if the funds are not divided. Finally, there is no showing of how much of the lump sum Ms. Garcia intends to set aside for the future care of the children. Because Ms. Garcia has failed repeatedly to assist the Court in understanding these issues, the Court cannot find that the lump sum payment to Ms Garcia is fair or reasonable to the children. Consequently, without having been provided another method for calculating how this amount should be divided, the Court will recommend that an amount equal to one-sixth of the amount ($14,999.09 per child) be placed in a blocked account for the benefit of each child, with Ms. Garcia receiving the remaining amount of $14,999.09.[1]

### D.    Recovery in Similar Actions

Each minor plaintiff is expected to receive annuity payments exceeding $60,000.00.  (Doc. 40 at 8-9.)  As noted above, the Court must consider the outcome of similar cases to determine whether the sum to settle the children's claims is reasonable.  *See Robidoux*, 638 F.3d at 1181; *Salmeron*, 724 F.2d at 1363.  Plaintiffs have no identified any similar cases to assist the Court in its determination of whether the proposed settlement is reasonable.  (*See generally* Doc. 37.)

Notably, the Court has not located cases which match the precise factual context of this action, and wrongful death actions brought on behalf of minors related to the loss of a parent have resulted in a broad recovery range.  For example, in *De Aguilar v. Northern Railroad Passenger Corp.*, 2009 WL 1035221 (E.D. Cal. Apr. 17, 2009), a minor was awarded a net total of $10,618.23 in a wrongful death suit that arose out of the death of the minor's stepfather in a train accident.  In *Cotton ex rel. McClure v. City of Eureka*, 2012 WL 6052519 (N.D. Cal. Dec. 5, 2012), a minor received $2,646,765.90 after a jury trial related to the death of the minor's father at the hand of police officers. Nevertheless, the Court notes that settlements for less than the amount here have been approved for the wrongful death of a parent.  *See, e.g.*, *E.R. v. County of Stanislaus*, 2016 WL 3354334, at *1 (E.D. Cal. June 16, 2016) (approving net settlement of $19,000 for the wrongful death of a parent while in custody); *Doe ex rel.*

---

[1] As needed in the future, Ms. Garcia may apply to the Court for an order authorizing withdrawal from these accounts. She may do this through an informal letter, which sets forth why the money is needed, how it will be used to the benefit of the child and the amount needed.

*Scott v. Gill*, 2012 WL 1939612 (N.D. Cal. May 29, 2012) (approving minor's compromise in the net amount of $7,188.85 in a wrongful death action involving the shooting and killing of the minor's mother by police officers); *Swayzer v. City of San Jose*, 2011 WL 3471217 (ND. Cal. Aug. 5, 2011) (finding a minor's compromise for net amount of $2,054.17 was appropriate in action involving alleged wrongful death of minor's father during his arrest).

Based upon the information provided in the motion and the supporting documents and considering the totality of the facts and circumstances of this case—and most particularly the result achieved compared to the awards in other wrongful death actions in the Ninth Circuit—the Court finds the proposed settlement is fair, reasonable, and in the best interests of plaintiffs Ce.H.G., M.H.G., P.H.G., Ca.H.G., and O.H.G.  Further, the proposed method of disbursement of the settlement via the annuities—with the remaining funds being placed in a blocked account for the minors' benefit— also appears to be fair and reasonable.

## IV.     Findings and Recommendations

Based upon the foregoing, the Court **RECOMMENDS:** Plaintiffs' motion for approval of the minors' compromise (Doc. 37) be **GRANTED IN PART** as follows:

1.    The settlement total of $600,000.00 be **APPROVED**;

2.    The initial lump payment of $250,000.00—from which the requested fees and expenses shall be taken—be **APPROVED**;

3.    The separate, lump sum payment to Ms. Garcia in the amount of 89,994.54 be **DENIED**;

4.    From the initial lump sum payment, Plaintiffs be directed to place $14,999.09 in a blocked account for each child from which funds may be withdrawn only upon a written order of the Court and to file proof of the creation of these accounts within 30 days of the Court's order adopting these findings and recommendations;

5.    This order authorizes the filing under seal of any documents related to the purchases of the annuities for the minor plaintiffs and blocked account;

6.    The parties be directed file a stipulation to dismiss the action within 45 days of any order adopting these recommendations; and

7.     This Court retain jurisdiction over any disputes related to the settlement agreement.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991); *Wilkerson v. Wheeler*, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **August 4, 2021**              _____ **/s/ Jennifer L. Thurston**
CHIEF UNITED STATES MAGISTRATE JUDGE